TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
ALLISON L. WESTFAHL KONG (Cal. Bar No. 290405)
Assistant United States Attorney
Chief, Trials, Integrity & Professionalism
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-1259/6526
    Facsimile: (213) 894-0141
    E-mail:   alexander.schwab@usdoj.gov
               allison.westfahl-kong@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-133-RGK |
|---|---|
|     Plaintiff, | PLEA AGREEMENT FOR DEFENDANT COREY CATO |
|        v. | |
| COREY CATO, | |
|     Defendant. | |

    1.    This constitutes the plea agreement between Corey Cato ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in this case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

DEFENDANT'S OBLIGATIONS

    2.    Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one and eight of the indictment in <u>United States v. Corey Cato</u>, CR No. 21-133-RGK, which charge defendant with conspiracy to commit financial institution fraud, in violation of 18 U.S.C. § 1349, and aggravated identity theft, in violation of 18 U.S.C. § 1028A.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

1          i.   Complete the Financial Disclosure Statement on a form

2  provided by the USAO and, within 30 days of defendant's entry of

3  guilty pleas, deliver the signed and dated statement, along with all

4  of the documents requested therein, to the USAO by either email at

5  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

6  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

7  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

8  criminal debt shall be assessed based on the completed Financial

9  Disclosure Statement and all required supporting documents, as well

10 as other relevant information relating to ability to pay.

11         j.   Authorize the USAO to obtain a credit report upon

12 returning a signed copy of this plea agreement.

13         k.   Consent to the USAO inspecting and copying all of

14 defendant's financial documents and financial information held by the

15 United States Probation and Pretrial Services Office.

16         l.   Agree that all court appearances, including his change

17 of plea hearing and sentencing hearing, may proceed by video-

18 teleconference ("VTC") or telephone, if VTC is not reasonably

19 available, so long as such appearances are authorized by Order of the

20 Chief Judge 20-097 or another order, rule, or statute.  Defendant

21 understands that, under the Constitution, the United States Code, the

22 Federal Rules of Criminal Procedure (including Rules 11, 32, and 43),

23 he may have the right to be physically present at these hearings.

24 Defendant understands that right and, after consulting with counsel,

25 voluntarily agrees to waive it and to proceed remotely.  Defense

26 counsel also joins in this consent, agreement, and waiver.

27 Specifically, this agreement includes, but is not limited to, the

28 following:

1          i.    Defendant consents under Section 15002(b) of the

2  CARES Act to proceed with his change of plea hearing by VTC or

3  telephone, if VTC is not reasonably available.

4          ii.   Defendant consents under Section 15002(b) of the

5  CARES Act to proceed with his sentencing hearing by VTC or telephone,

6  if VTC is not reasonably available.

7          iii. Defendant consents under 18 U.S.C. § 3148 and

8  Section 15002(b) of the CARES Act to proceed with any hearing

9  regarding alleged violations of the conditions of pretrial release by

10 VTC or telephone, if VTC is not reasonably available.

11     m.    Agree to and not oppose the imposition of the

12 following conditions of probation or supervised release: Defendant

13 shall submit defendant's person and any property, residence, vehicle,

14 papers, computer, other electronic communication or data storage

15 devices or media, and effects to search and seizure at any time of

16 the day or night by any law enforcement or probation officer, with or

17 without a warrant, and with or without cause.

18                   FORFEITURE AND FINANCIAL ACCOUNTABILITY

19     3.    Defendant further agrees:

20     a.    To forfeit all right, title, and interest in and to

21 any and all monies, properties, and/or assets of any kind, derived

22 from or acquired as a result of the illegal activity to which

23 defendant is pleading guilty, specifically including, but not limited

24 to, the Rolex Datejust defendant had on his person at the time of his

25 arrest on July 5, 2021 (collectively, the "Forfeitable Assets").

26     b.    To the Court's entry of an order of forfeiture at or

27 before sentencing with respect to the Forfeitable Assets and to the

28 forfeiture of the assets.

1   c. To take whatever steps are necessary to pass to the

2 United States clear title to the Forfeitable Assets, including,

3 without limitation, the execution of a consent decree of forfeiture

4 and the completing of any other legal documents required for the

5 transfer of title to the United States.

6   d. Not to contest any administrative forfeiture

7 proceedings or civil judicial proceedings commenced against the

8 Forfeitable Assets.  If defendant submitted a claim and/or petition

9 for remission for all or part of the Forfeitable Assets on behalf of

10 himself or any other individual or entity, defendant shall and hereby

11 does withdraw any such claims or petitions, and further agrees to

12 waive any right he may have to seek remission or mitigation of the

13 forfeiture of the Forfeitable Assets.

14   e. Not to assist any other individual in any effort

15 falsely to contest the forfeiture of the Forfeitable Assets.

16   f. Not to claim that reasonable cause to seize the

17 Forfeitable Assets was lacking.

18   g. To prevent the transfer, sale, destruction, or loss of

19 any and all assets described above to the extent defendant has the

20 ability to do so.

21   h. To fill out and deliver to the USAO a completed

22 financial statement listing defendant's assets on a form provided by

23 the USAO.

24   i. That forfeiture of Forfeitable Assets shall not be

25 counted toward satisfaction of any special assessment, fine,

26 restitution, costs, or other penalty the Court may impose.

27      <u>THE USAO'S OBLIGATIONS</u>

28  4. The USAO agrees to:

5

1          a.    Not contest facts agreed to in this agreement.

2          b.    Abide by all agreements regarding sentencing contained

3    in this agreement.

4          c.    At the time of sentencing, move to dismiss the

5    remaining counts of the indictment.  Defendant agrees, however, that

6    at the time of sentencing the Court may consider any dismissed

7    charges in determining the applicable Sentencing Guidelines range,

8    the propriety and extent of any departure from that range, and the

9    sentence to be imposed.

10          d.    At the time of sentencing, provided that defendant

11   demonstrates an acceptance of responsibility for the offense up to

12   and including the time of sentencing, recommend a two-level reduction

13   in the applicable Sentencing Guidelines offense level, pursuant to

14   USSG § 3E1.1.  Given the timing of defendant's entry of guilty pleas,

15   the government does not intend to move for an additional one-level

16   reduction.

17                        <u>NATURE OF THE OFFENSE</u>

18        5.    Defendant understands that for defendant to be guilty of

19   the crime charged in count one, that is, conspiracy to commit

20   financial institution fraud, in violation of 18 U.S.C. § 1349, the

21   following must be true: (1) there was an agreement between two or

22   more persons to commit financial institution fraud, in violation of

23   18 U.S.C. § 1344; and (2) defendant joined in the agreement knowing

24   of its object and intending to help accomplish it.

25          a.    In order for a person to be guilty of committing

26   financial institution fraud, in violation of 18 U.S.C. 1344(1), the

27   following must be true: (1) the individual knowingly executed a

28   scheme to defraud a financial institution as to a material matter;

                                   6

1  (2) the individual did so with the intent to defraud the financial

2  institution; and (3) the financial institution was insured by the

3  Federal Deposit Insurance Corporation or National Credit Union

4  Administration.

5      b.   In order for a person to be guilty of committing

6  financial institution fraud, in violation of 18 U.S.C. 1344(2), the

7  following must be true: (1) the individual knowingly carried out a

8  scheme or plan to obtain money or property from a financial

9  institution by making false statements or promises; (2) the

10 individual knew that the statements or promises were false; (3) the

11 statements or promises were material; that is, they had a natural

12 tendency to influence, or were capable of influencing, a financial

13 institution to part with money or property; (4) the individual acted

14 with the intent to defraud; and (5) the financial institution was

15 insured by the Federal Deposit Insurance Corporation or National

16 Credit Union Administration.

17     6.   Defendant understands that for defendant to be guilty of

18 the crime charged in count eight, that is, aggravated identity theft,

19 in violation of 18 U.S.C. § 1028A, the following must be true:

20 (1) defendant knowingly possessed, without legal authority, a means

21 of identification of another person; (2) defendant knew that the

22 means of identification belonged to a real person; (3) defendant did

23 so during and in relation to the offense of conspiracy to possess

24 fifteen or more access devices, a felony violation of 18 U.S.C.

25 § 1029(b)(2).

26                    <u>PENALTIES AND RESTITUTION</u>

27     7.   Defendant understands that the statutory maximum sentence

28 that the Court can impose for a violation of 18 U.S.C. § 1349, as

charged in count one of the indictment, is: 30 years' imprisonment; a five-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of 18 U.S.C. § 1028A, as charged in count eight of the indictment, is a two-year term of imprisonment, which must run consecutive to any other sentence of imprisonment; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 32 years' imprisonment; a five-year period of supervised release; a fine of $1,250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $200.

10.   Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in USSG § 1B1.3, in connection with the offense to which defendant is

pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in USSG § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $1,992,638.43 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated

collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

13.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

## FACTUAL BASIS

14.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support guilty pleas to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 16 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

1    Beginning no later than in or about September 2014, and

2    continuing through on or about May 29, 2019, in Los Angeles, Orange,

3    and Riverside Counties, within the Central District of California,

4    and elsewhere, there existed conspiracies to commit financial

5    institution fraud and possess fifteen or more unauthorized access

6    devices.  Defendant joined in these related agreements no later than

7    2017 knowing of their objects and intending to help accomplish those

8    objects.

9    Defendant and his co-conspirators would create "synthetic

10   identities" by combining false personal information, such as

11   fictitious names and dates of birth, with "profile" information of

12   real persons, such as the social security number of a real person.

13   They would then use the synthetic identities and corresponding false

14   identification documents to open bank and credit card accounts at

15   federally insured financial institutions, thereby developing a credit

16   history for the synthetic identities.  Defendant and his co-

17   conspirators used the credit cards in the names of synthetic

18   identities to fund their lifestyles and participation in the scheme.

19   By using credit cards in the names of synthetic identities, defendant

20   and his co-conspirators distanced themselves from the charges

21   incurred on the cards to avoid responsibility for those charges.

22   In furtherance of the conspiracies, defendant maintained in

23   Georgia a commercial mail receiving agency space called "Pak Mail" as

24   a "mail drop" location at which he and his co-conspirators would

25   receive correspondence relating to their scheme, including bank

26   account and credit card statements for accounts opened in the names

27   of synthetic identities.  Defendant and his co-conspirators would

28   also store credit cards -- including far in excess of fifteen

11

unauthorized access devices, identification documents, and
information relating to various synthetic identities at locations
under their control, such as apartments and public storage units.

The following are examples of acts the defendant committed in
furtherance of the conspiracies:

- On May 3, 2017, defendant submitted a rental application
  for an apartment in Atlanta, Georgia, in which he falsely
  listed his name as "Jason Brown," used a social security
  number that did not belong to him, and provided a fake
  California Driver's License bearing defendant's photograph
  and the name "Jason Brown."

- On May 2, 2018, using coded language in a recorded jail
  conversation, co-conspirator Mounir Deiri asked co-
  conspirator Andres Velarde to instruct defendant to remove
  incriminating evidence from Deiri's apartment in Georgia.

- On February 12, 2019, at his Atlanta apartment that he had
  rented under the name "Jason Brown," defendant possessed
  the following items: a credit card in the name of "Adam M
  Lopez," a digital image of a credit card in the name of
  "Carlos Rivera," a digital image of a loan record relating
  to the Northridge house, and a digital image of a mugshot
  of co-conspirator Armstrong, and financial records in the
  name of "Adam M Lopez," digital images of profile
  information for the synthetic identity "Adam M Lopez."
  Defendant knew the profile information for the Adam M Lopez
  synthetic identity included the social security number of a
  real person, and it did in fact include the social security
  number of victim E.Z.

In addition to the identity theft victims of defendant's conspiracy, who numbered in the dozens, various victims sustained financial losses that were reasonably foreseeable to defendant and within the scope of the criminal conduct defendant jointly undertook with his co-conspirators.  At a minimum, those losses are as follows:

- Citi Bank: $70,380
- Discover Bank: $921,437.03
- Synchrony Bank: $559,905.79
- Barclay's Bank Delaware: $285,035.29
- American Express: $155,880.32

In total, the losses resulting from the conspiracy totaled at least $1,992,638.43, an amount that was reasonably foreseeable to defendant as a consequence of the conspiracy.

SENTENCING FACTORS

15.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

16.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

13

| | | |
|---|---|---|
| Base Offense Level: | 7 | USSG § 2B1.1(a)(1) |
| Loss > $1.5 million | +16 | USSG § 2B1.1(b)(1)(I) |
| 10 or More Victims: | +2 | USSG § 2B1.1(b)(2)(A)(i) |
| Relocation of Scheme/Sophisticated Means | +2 | USSG § 2B1.1(b)(10) |
| Trafficking Unauthorized Access Devices | +2 | USSG § 2B1.1(b)(11) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

17.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

18.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

19.   Defendant understands that by pleading guilty, defendant gives up the following rights:

> a.   The right to persist in pleas of not guilty.

> b.   The right to a speedy and public trial by jury.

> c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

> d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

14

1        e.    The right to confront and cross-examine witnesses
2   against defendant.

3        f.    The right to testify and to present evidence in
4   opposition to the charges, including the right to compel the
5   attendance of witnesses to testify.

6        g.    The right not to be compelled to testify, and, if
7   defendant chose not to testify or present evidence, to have that
8   choice not be used against defendant.

9        h.    Any and all rights to pursue any affirmative defenses,
10  Fourth Amendment or Fifth Amendment claims, and other pretrial
11  motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTIONS

20.  Defendant understands that, with the exception of an appeal
based on a claim that defendant's guilty pleas were involuntary, by
pleading guilty defendant is waiving and giving up any right to
appeal defendant's convictions on the offenses to which defendant is
pleading guilty.  Defendant understands that this waiver includes,
but is not limited to, arguments that the statutes to which defendant
is pleading guilty are unconstitutional, and any and all claims that
the statement of facts provided herein is insufficient to support
defendant's guilty pleas.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

21.  Defendant agrees that, provided the Court imposes a total
term of imprisonment on the of conviction of no more than 111 months,
defendant gives up the right to appeal all of the following: (a) the
procedures and calculations used to determine and impose any portion
of the sentence; (b) the term of imprisonment imposed by the Court;
(c) the fine imposed by the Court, provided it is within the

15

statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, so long as it is no more than $2 million; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant in paragraph 2 above.

22.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 94 months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

23.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this

16

1  agreement and the filing commencing any such action; and

2  (ii) defendant waives and gives up all defenses based on the statute

3  of limitations, any claim of pre-indictment delay, or any speedy

4  trial claim with respect to any such action, except to the extent

5  that such defenses existed as of the date of defendant's signing this

6  agreement.

7  RESULT OF VACATUR, REVERSAL OR SET-ASIDE

8       24.  Defendant agrees that if any count of conviction is

9  vacated, reversed, or set aside, the USAO may: (a) ask the Court to

10 resentence defendant on any remaining counts of conviction, with both

11 the USAO and defendant being released from any stipulations regarding

12 sentencing contained in this agreement, (b) ask the Court to void the

13 entire plea agreement and vacate defendant's guilty pleas on any

14 remaining counts of conviction, with both the USAO and defendant

15 being released from all their obligations under this agreement, or

16 (c) leave defendant's remaining convictions, sentence, and plea

17 agreement intact.  Defendant agrees that the choice among these three

18 options rests in the exclusive discretion of the USAO.

19 EFFECTIVE DATE OF AGREEMENT

20      25.  This agreement is effective upon signature and execution of

21 all required certifications by defendant, defendant's counsel, and an

22 Assistant United States Attorney.

23 BREACH OF AGREEMENT

24      26.  Defendant agrees that if defendant, at any time after the

25 effective date of this agreement, knowingly violates or fails to

26 perform any of defendant's obligations under this agreement ("a

27 breach"), the USAO may declare this agreement breached.  All of

28 defendant's obligations are material, a single breach of this

agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

27.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

28.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

29.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 16 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

30.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions

different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

31.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

32.  The parties agree that this agreement will be considered
//
//

1  part of the record of defendant's guilty plea hearing as if the

2  entire agreement had been read into the record of the proceeding.

3  AGREED AND ACCEPTED

4  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
5  CALIFORNIA

6  TRACY L. WILKISON
   United States Attorney
7

8  _____              May 5, 2022
   ALEXANDER B. SCHWAB                     _____
9  ALLISON L. WESTFAHL KONG                Date
   Assistant United States Attorneys
10
   *Corey Cato*                           May 5, 2022
11 _____              _____
   Corey Cato (May 5, 2022 18:02 EDT)
   COREY CATO                              Date
12 Defendant

13 *David J. Kaloyanides*                  2022/05/05
14 _____              _____
   DAVID KALOYANIDES                       Date
15 Attorney for Defendant
   COREY CATO

16

17                    CERTIFICATION OF DEFENDANT

18      I have read this agreement in its entirety.  I have had enough

19 time to review and consider this agreement, and I have carefully and

20 thoroughly discussed every part of it with my attorney.  I understand

21 the terms of this agreement, and I voluntarily agree to those terms.

22 I have discussed the evidence with my attorney, and my attorney has

23 advised me of my rights, of possible pretrial motions that might be

24 filed, of possible defenses that might be asserted either prior to or

25 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

26 of relevant Sentencing Guidelines provisions, and of the consequences

27 of entering into this agreement.  No promises, inducements, or

28 representations of any kind have been made to me other than those

                                21

1   contained in this agreement.  No one has threatened or forced me in

2   any way to enter into this agreement.  I am satisfied with the

3   representation of my attorney in this matter, and I am pleading

4   guilty because I am guilty of the charge and wish to take advantage

5   of the promises set forth in this agreement, and not for any other

6   reason.

7   *Corey Cato*                    May 5, 2022
     Corey Cato (May 5, 2022 18:02 EDT)

8   COREY CATO                      Date
   Defendant

9

10              CERTIFICATION OF DEFENDANT'S ATTORNEY

11      I am COREY CATO's attorney.  I have carefully and thoroughly

12   discussed every part of this agreement with my client.  Further, I

13   have fully advised my client of his rights, of possible pretrial

14   motions that might be filed, of possible defenses that might be

15   asserted either prior to or at trial, of the sentencing factors set

16   forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

17   provisions, and of the consequences of entering into this agreement.

18   To my knowledge: no promises, inducements, or representations of any

19   kind have been made to my client other than those contained in this

20   agreement; no one has threatened or forced my client in any way to

21   enter into this agreement; my client's decision to enter into this

22   agreement is informed and voluntary; and the factual basis set forth

23   in this agreement is sufficient to support my client's entry of

24   guilty pleas pursuant to this agreement.

25   *David J. Kaloyanides*            2022/05/05

26   DAVID KALOYANIDES             Date
   Attorney for Defendant

27   COREY CATO

28

                                 22